

LAURENCE M. SCHWARTZTOL
STAFF ATTORNEY
RACIAL JUSTICE PROGRAM
T/212.519.7849.
LSCHWARTZTOL@ACLU.ORG

January 30, 2014

**VIA ECF**

Honorable Steven M. Gold
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

Re:   ***Bruno v. City of New York, No. 10-cv-0210 (RRM)(SMG)***

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

Your Honor:

I represent Plaintiffs in the above-referenced civil rights action. In advance of the February 4, 2014 status conference scheduled in this matter, and pursuant to the Court's November 20, 2013 Order, Dckt. No. 332, I write to inform the Court of outstanding discovery matters that Plaintiffs hope can be resolved at the conference. Plaintiffs have made good-faith efforts to resolve each of the issues identified below.

1. ***Requests for Admission***

Despite earlier efforts by the Court to resolve this issue, Defendants continue to refuse to provide answers to Requests for Admission regarding systems in place to alert NYPD supervisors to patterns of misconduct by School Safety Agents ("SSAs"). Specifically, Defendants' Responses and Objections to Plaintiffs' Second Set of Requests for Admission included unsustainable objections to Requests for Admission Nos. 56-59. Those requests asked Defendants to "[a]dmit that the NYPD does not have an automated system by which supervisors of an individual SSA are notified when the [Internal Affairs Bureau] receives any number of complaints above a fixed threshold" about that SSA regarding: "the use of force" (RFA No. 56), "abuse of authority" (RFA No. 57), "arrests" (RFA No. 58), and "the use of handcuffs" (RFA No. 59). Ex. A, Defendants' Objections to Plaintiffs' Second RFAs.

1

All of the RFAs at issue incorporate the guidance provided by the Court at the November 20, 2013 conference. At that hearing, the parties discussed Plaintiffs' RFA Nos. 16-19 (which have subsequently been amended and renumbered as RFA Nos. 56-59), which sought admissions regarding the lack of "automated systems" for tracking complaints concerning certain kinds of SSA misconduct. In response to Defendants' assertions that those RFAs were vague and ambiguous, the Court permitted Plaintiffs to rephrase the RFAs to inquire whether "there was an automated warning or alert system to supervisory or management personnel when certain criteria were met indicating misconduct or overzealousness by SSA's." *See* Ex. B, 11/20/13 Hr'g Tr., 29:9-12. Plaintiffs rephrased the RFAs in accordance with the Court's guidance. Nonetheless, Defendants insist that Plaintiffs "failed to correct the obvious deficiencies noted by Judge Gold," without offering any explanation as to what vagueness or ambiguity remains. *See* Ex. C, 1/27/14 Email from Zuckerman to Schwartztol. We expect to move to compel substantive responses if these issues remain unresolved after the status conference.

## 2. *Databases of Arrest Reports*

As detailed in Plaintiffs' December 13, 2013 letter to the Court, there are serious problems with databases composed of Arrest Reports, which were produced by Defendants on October 4, 2013.[1] *See* 12/13/13 Ltr. from Kateron to Chief Magistrate Judge Gold, Dckt. No. 343. On December 9, 2013, we alerted Defendants' counsel that there were significant discrepancies between the number of arrests reflected in the Arrest Report database produced by Defendants and the data publicly reported by the NYPD pursuant to the Student Safety Act, which requires the NYPD, on a quarterly basis, to report "the number of individuals arrested and/or issued a summons by school safety agents or police officers assigned to the school safety division of the New York city police department," NYC Administrative Code 14-152 (b)(1). *See* Ex. D, 12/9/13 Ltr. from Kateron to Zuckerman. Because the information in these databases will play a central role in Plaintiffs' expert reports, the issues with the databases have significantly delayed our ability to complete these reports.

During a meet-and-confer on January 29, 2014, nearly two months after we first raised this issue, Defendants represented that the discrepancies appeared because the Arrest Report data produced to Plaintiffs was compiled by searching for arrests that took place at school addresses, whereas the Student Safety Act data is compiled by searching for arrests in which the arresting

---

[1] Unfortunately, this is only the most recent iteration of deficiencies in Defendants' production of these databases. Defendants have repeatedly produced incomplete or inaccurate databases of Criminal Incident Report and Arrest Reports, which Defendants were initially ordered to produce by November 28, 2011, and February 8, 2012, respectively. 1/13/12 Ltr. from Kateron, Dckt. No. 149, at 2; 2/1/12 Status Report, Dckt. No. 151. The databases Defendants initially produced were deficient in many aspects, and on April 12, 2013, the Court ordered Defendants to supplement their incomplete production by May 3, 2013. Minute Entry, Dckt. No. 258. When Defendants finally produced the supplemental databases in June 2013, Plaintiffs again discovered significant errors in those databases, leading to yet another production in October 2013. Dckt. No. 343.

2

officer is a member of the School Safety Division. Counsel for Defendants informed Plaintiffs that Defendants will not be able produce the correct data for six to eight weeks.

Serial delays in the production of these databases, combined with Defendants' inability or unwillingness to produce complete and accurate data, have significantly frustrated Plaintiffs' efforts to move this litigation forward. Defendants, however, have failed to treat this issue with seriousness, much less urgency. Indeed, it is disturbing that Defendants failed to conform the method of production in this case to the method the NYPD apparently deems appropriate when reporting student-arrest data pursuant to the Student Safety Act. Moreover, while we alerted Defendants to the problems with the Arrest Report database on December 9, 2013, and requested a prompt meet-and-confer, Defendants refused to even propose a meeting until January 28, when they said they could confer the following day. Plaintiffs therefore request that the Court set a date certain for the comprehensive and accurate production of these databases and revise the schedule for the exchange of expert reports accordingly.

### 3. *Personal Notes of SSS Ocasio*

Defendants still have not produced "personal notes" of School Safety Supervisor ("SSS") Ocasio, which Plaintiffs have repeatedly requested since SSO Ocasio referenced them over a year ago during his January 23, 2013 deposition. *See* Ex. E, Ocasio Tr., 8:3-10:24. At that deposition, Defendants' counsel represented that Defendants would produce the notes after reviewing them. *Id.* at 9:24-10:7. Since then, Plaintiffs reiterated the request for these documents at least four times. *See* Ex. F, 2/4/2013 Email from Kateron to Zuckerman, 3/7/13 Email from Schwartztol to Zuckerman, 4/18/13 and 4/19/13 Emails between Kateron and Zuckerman, 1/9/14 Email from Menschel to Zuckerman, 1/13/14 Email from Zuckerman to Menschel. Despite repeated promises to produce the notes, *see id.*, Defendants have yet to produce them. Plaintiffs request that the Court impose a prompt deadline for producing these documents.

### 4. *Closing Reports Following Internal Investigations*

Plaintiffs have requested closing reports for any investigations into allegations of false arrest, excessive force, or dishonesty against SSA Baptiste, SSA Jordan, and PO Ebreo, all of whom are named as Defendants in the Second Amended Complaint, Dckt. No. 345. It has been the normal course in this matter for Defendants to produce these reports involving named Defendants, and during the March 12, 2013 status conference and June 20, 2013 status conference, the Court approved of the production of such reports. *See* Ex. G, 3/12/13 Hr'g Tr., 38:9-39:23, 6/20/13 Hr'g Tr., 42:11-13.

Defendants Baptiste, Jordan, and Ebreo were not yet named Defendants when this issue was last discussed before the Court. Nevertheless, the production of the closing reports regarding these Defendants would be consistent with the Court's prior rulings. Plaintiffs have made repeated inquiries regarding Defendants' position on this, but Defendants have only provided that they have not reached a decision on this issue. We therefore request that the Court order Defendants to promptly produce these reports.

We are grateful the Court's consideration of these matters.

Sincerely,

*/s/ Laurence M. Schwartztol*
Laurence M. Schwartztol