UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DESTINY BRUNO, et al.,

                      Plaintiffs,

    -against-
                                                  ORDER

THE CITY OF NEW YORK, et al.,                  10-CV-210 (RRM) (SMG)

                      Defendants.
------------------------------------------------------------X
Gold, S., *United States Magistrate Judge*:

        Currently pending before the Court is defendants' motion for spoliation sanctions and to compel discovery. Docket Entry 369. The motion arises out of plaintiffs' stated intention to rely in dispositive motion practice and at trial on a report published by the American and New York Civil Liberties Unions (the "Unions") entitled *Criminalizing the Classroom* (the "Report"). A copy of the Report is attached to the memorandum submitted by the Unions in opposition to defendants' motion. Docket Entry 375-2.

        Plaintiffs assert that they intend to rely on the Report as evidence that City officials were on notice of the systemic police misconduct they allege in this lawsuit. Docket Entry 319. Over plaintiffs' objection, I have already directed that the Unions produce to defendants the underlying factual material relied upon when the Report was prepared.

        Defendants now move for spoliation sanctions on the grounds that the Unions failed to retain certain survey forms that were completed by New York City public school students and used as a source of information for the Report. Defendants have submitted a blank sample of the survey form. Declaration of Mark D. Zuckerman ("Zuckerman Decl.") Ex. D, Docket Entry 370-4. In further support of their motion, defendants have also submitted a letter from counsel

for the Unions reporting that, "pursuant to the NYCLU's document retention policy," the completed surveys "were . . . destroyed in May 2013." Zuckerman Decl. Ex. E.

Defendants also move to compel additional discovery about the Report. More specifically, defendants seek to compel disclosure of the identity of persons whose statements were quoted or cited in the Report. Although defendants have received various notes of interviews, the identities of the interviewees have apparently been redacted prior to production of the interview notes by the Unions. Zuckerman Decl. Ex. I. Finally, defendants seek to depose Udi Ofer, a former employee of the New York Civil Liberties Union, about certain aspects of the Report's preparation, including how the schools discussed in the Report and the students and others interviewed in connection with its preparation were selected.

Defendants' motion is denied, but not for the reasons advanced by the Unions in opposition. Rather, I deny defendants' motion because, having carefully examined the Report, I cannot fathom any circumstance under which it might be received in evidence. The Report is comprised largely of blatant hearsay. Even the introduction to the Report includes a recounting of events alleged to have taken place at a particular school on November 17, 2006, with statements attributed by unnamed sources to police officers and an anecdote about a particular student identified as Carlos who, as far as the Court is aware, has not been identified as a trial witness or made available for deposition. Nor is Carlos' story the only one recounted by a student who will not be testifying at trial. *See, e.g.,* Report at 14.

Moreover, the Report -- sub-titled "The Over-Policing of New York City Schools" -- is clearly written in a manner designed to persuade its readers to adopt a point of view favorable to plaintiffs about the very issues raised in the pending litigation. The Report's margins include bold, large-font text purporting to quote teachers and students making statements such as, "Can

we please not treat already-struggling inner-city teenagers who have gotten themselves to school like they've already committed a crime," "Sometimes the classroom feels like a jail cell," "The police like to put their hands on kids without reason," "They're treating us like criminals, like we're animals," and "This isn't a school anymore; this is Rikers." Report at 7, 9, 12, 13, 14. In regular text, the Report cites unnamed students who describe police officers as "perverts" who "stigmatize and harass gay, lesbian, bisexual and transgender students" and are "too hostile and aggressive, yelling at students and treating them with disrespect, even when the students have done nothing wrong." Report at 16. Statements like these – presumably selected from among many more by the very same organization providing counsel to plaintiffs, largely unattributed, and never subjected to cross-examination by defendants or anyone else – have no place at a trial.

Plaintiffs have indicated that they intend to offer the Report as proof that defendants were on notice of the allegations that it makes. The fact that the Report was published, and a brief summary of its contents, should be adequate to establish whatever proof of notice the Report's publication might provide. For example, plaintiffs might be permitted to offer evidence of the Report's issuance, its receipt by defendants, and a brief excerpt from the Report's executive summary, such as a statement that the Report alerted defendants that the Unions contended that,

> Because these school-assigned police personnel are not directly subject to the supervisory authority of school administrators, and because they often have not been adequately trained to work in educational settings, SSAs and police officers often arrogate to themselves authority that extends well beyond the narrow mission of securing the safety of the students and teachers. They enforce school rules relating to dress and appearance. They make up their own rules regarding food or other objects that have nothing whatsoever to do with school safety. On occasion they subject educators who question the NYPD's treatment of students to retaliatory arrests. More routinely, according to our interviews and survey, they subject students to inappropriate treatment including: derogatory, abusive and discriminatory comments and conduct; intrusive searches; unauthorized confiscation of students' personal items, including food, cameras and essential school supplies; inappropriate sexual attention; physical abuse; and arrest for minor non-criminal violations of school rules.

3

Report, Executive Summary, Docket Entry 375-2 at 5 of 37. However, because the Report itself is riddled with inflammatory hearsay mirroring the contentions of plaintiffs, it seems clear that even a carefully crafted limiting instruction could not overcome the prejudicial impact that would result if the entire Report, or even substantial portions of it, were received in evidence.

In short, I am convinced that the Report will not be received in evidence, and that any reference to its contents will be abbreviated more or less as suggested above. In that light, it is clear that the sanctions defendants seek as a result of the Unions' failure to retain the completed student survey forms will not be required. "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (internal citation omitted). Assuming that any reference to the Report at trial is limited as suggested above, no sanction will be required "to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Even if plaintiffs are permitted to bring out at trial that the conclusions asserted in the Report are based in part on surveys of students, any prejudice to defendants resulting from the destruction of the survey responses could be addressed adequately by allowing defendants to bring out in response that their attempt to obtain access to the completed survey forms in discovery was frustrated by the failure of the Unions to retain them. Moreover, with respect to defendants' motion to compel additional discovery, I conclude that the discovery already produced to defendants is more than adequate to meet the limited facts about the Report that might conceivably be admitted at trial, and that the burden of the additional discovery defendants seek is outweighed by its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C).

4

For all these reasons, defendants' motion for spoliation sanctions and to compel further discovery about the preparation of the Report is denied.

SO ORDERED.

/s/
_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
April 7, 2014

U:\Criminalizing the classroom.docx